IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CITY OF CHICAGO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No.  05 C 6738 |
| v. | ) |
| | ) HONORABLE DAVID H. COAR |
| ARVINMERITOR INC., NAILITE | ) |
| INTERNATIONAL, INC., GRAHAM | ) |
| PARTNERS, INC. and COMMONWEALTH | ) |
| EDISON COMPANY | ) |
| | ) |
| Defendants. | ) |
| | ) |
| NAILITE INTERNATIONAL, INC., | ) |
| Third-Party Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| THE ESTATE OF WILFRED E. DAVIS, | ) |
| ELIZABETH F. DAVIS, RICHARD A. DAVIS, | ) |
| DARYL A. BOYD, DIANE JOSEPH | ) |
| FELDMAN and DALLAS M. CRICK, | ) |
| | ) |
| Third-Party Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Nailite International, Inc. ("Nailite") is being sued, along with several other corporate defendants (whose names are irrelevant for purposes of this decision), by the City of Chicago for alleged violations of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA") and various other pendent state law claims.  In a third-party complaint, Nailite sued certain stockholders who sold the stock of a company that merged with another company

-1-

that ultimately became Nailite. Nailite alleges that those certain stockholders have duties to indemnify and defend Nailite against suits and to pay, perform and discharge Nailite's obligations relating to a certain piece of real property that is the subject of the CERCLA litigation. Those stockholders have filed motions to dismiss Nailite's third-party complaint that are being consolidated for purposes of this Opinion and Order. Before this Court now are the consolidated motions to dismiss made pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

For the reasons stated in the opinion below, the motions to dismiss are **DENIED**.

## BACKGROUND

Elizabeth Davis, Richard Davis, Wilfred Davis (deceased), Diane Feldman, Daryl Boyd and Dallas Crick (collectively, the "Sellers") were all stockholders of a company that was a predecessor of Nailite. That company owned a certain property (the "Amforge Property") that is the subject of the CERCLA litigation. In or around 1988 and pursuant to a stock-purchase agreement, the Sellers sold their stock in the predecessor company to a holding company that subsequently merged into the entity that is now Nailite. Nailite alleges in its third-party complaint that the Sellers contracted in that same stock purchase agreement to indemnify, defend and hold Nailite harmless against all claims relating to certain assets, including the Amforge Property. Nailite also alleges that the Sellers entered into an assumption of liabilities agreement, ancillary to the stock-purchase agreement, which provided for the Sellers to pay, perform and discharge any and all obligations of Nailite arising out of transactions prior to the closing date of that particular stock-purchase deal.

Nailite seeks a declaration that the Sellers are obligated to 1) indemnify, defend and hold harmless Nailite against all claims relating to Nailite's interest in the Amforge Property, 2) pay, perform and discharge any and all obligations of Nailite arising out its interest in the Amforge Property, and 3) any other relief this court may deem appropriate. The Sellers, along with the Estate of the deceased Wilfred Davis, now move this Court to dismiss Nailite's Third-Party Complaint because the claims asserted are not ripe for adjudication in this Court, the agreements do not impose a duty to defend upon the Sellers, and lastly, Nailite is barred by an Illinois statute of limitations from recovering any claim against the Estate of Wilfred Davis.

## STANDARD OF REVIEW

The purpose of a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is to test the sufficiency of the complaint, not to decide the merits of the case. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990) (citation omitted). On a 12(b)(6) motion, the Court accepts all well-pleaded allegations in the plaintiff's complaint as true, Fed. R. Civ. P. (12)(b)(6), and views the allegations in the light most favorable to the plaintiff. Bontkowski v. First Nat'l Bank of Cicero, 998 F.2d 459, 461 (7th Cir. 1993). A court should not dismiss a complaint "unless it appears beyond all doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Upon a 12(b)(1) motion to dismiss though, a district court does not necessarily accept all factual allegations of the complaint as true. See Kolowitz v. United States, 1995 WL 32612 (N.D.Ill. 1995). A court may consider additional evidence that addresses the question of subject-matter jurisdiction. United Transp. Union v. Gateway W. Ry. Co., 78 F.3d 1208, 1210 (7th Cir. 1996).

**ANALYSIS**

**The Duty to Defend**

The obligation of the Sellers to defend Nailite against any claims relating to the Amforge Property is separate from their duty to indemnify Nailite, even though the two requests were contained within the same provision of the agreement and both are included in the prayer for relief. Obviously, a plaintiff who alleges that a defendant has a duty to defend him in a pending action is suffering a real and cognizable legal injury if that defendant fails to do so. In fact, it has been consistently held that under Illinois law, the duty to defend is broader than the duty to indemnify. Northland Ins. Co. v. Crane, 2006 WL 305877, *2 (N.D.Ill.). Therefore, federal jurisdiction over duty to defend claims is activated before jurisdiction in duty to indemnify claims. Id. at *3. Furthermore, in the insurance law context, claims over defense obligations are generally always regarded as ripe for adjudication during pending primary lawsuits, even when it is unclear whether the particular insurance policy contains a duty to defend. Union Tank Car Co. v. Aerojet-Gen. Corp., 2005 WL 2405802, *2 (N.D.Ill.).

Here, although the duty to defend arises within the context of a stock purchase agreement, not an insurance policy, the principles are the same. When the plaintiff in the primary suit filed a complaint naming Nailite as a defendant and referencing the Amforge property, the Sellers duty to defend Nailite may have been triggered, depending on the terms of the stock purchase agreement. The Sellers and Nailite have a concrete, definite dispute as to whether the Sellers must defend Nailite in the primary action filed by the City of Chicago. Nailite must provide a defense in the ongoing CERCLA litigation or run the risk of incurring a default judgment of liability.

Therefore, the Sellers' motions to dismiss are DENIED as to the issue of whether the Sellers have a duty to defend Nailite against any claims relating to the Amforge Property.

**Whether the Contract Imposes a Duty to Defend**

Pursuant to Rule 12(b)(6), Defendants Richard Davis, Boyd and Feldman move this court to dismiss Nailite's third-party complaint on the grounds that the contract (the stock purchase agreement) does not impose a duty to defend, rather it gives the Sellers a right to defend should they be so inclined. On a 12(b)(6) motion, the Court accepts all well-pleaded allegations in the plaintiff's complaint as true, Fed. R. Civ. P. 12(b)(6), and views the allegations in the light most favorable to the plaintiff. Bontkowski v. First Nat'l Bank of Cicero, 998 F.2d 459, 461 (7th Cir. 1993). Generally, a court will not look beyond the complaint, but Rule 10(c) of the Federal Rules of Civil Procedure states that "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." See McCready v. eBay, Inc., 453 F.3d 882, 891 (7th Cir. 2006).

Turning to the stock purchase agreement, the interpretation of a contract is a question of law determined by the court. Florida East Coast Ry. Co. v. CSX Transp., Inc., 42 F.3d 1125, 1128 (7th Cir.1994). Furthermore, contract disputes not involving federal questions are governed by state law.[1] Illinois law provides that interpretation of a contract begins with the express language itself. Emergency Medical Care, Inc. v. Marion Memorial Hosp., 94 F.3d 1059, 1061 (7th Cir. 1996). Section 7.2(i) contains explicit language obligating the Sellers to

---

[1] Neither the stock purchase agreement nor the assumption of liabilities agreement contain a governing law provision. None of the parties have addressed the governing law of the agreements in their memoranda. Since both the "Buyer" and the entity whose stock was being sold were both Illinois corporations at the time of the sale of stock, this Court will assume the parties intended Illinois law to govern both agreements.

defend Nailite against all claims and actions relating to the Amforge Property. Section 7.2(v) also contains language that the Sellers purport gives them the option, rather than the obligation, to defend Nailite against all claims and actions relating to the Amforge Property.[2] If the language of a contract unambiguously answers the question at issue, then the analysis ends. Emergency Medical Care, Inc., 94 F.3d at 1061. "A contract is intrinsically ambiguous if 'its language is reasonably and fairly susceptible to more than one meaning.'" Id. (citing CSX Transp. v. Chicago and North Western Transp., 62 F.3d 185, 189 (7th Cir. 1995)). That the parties disagree over a provision does not necessarily mean the provision is ambiguous. Id. Illinois law requires that clear and unambiguous terms be given their plain and ordinary meanings. Id. Moreover, a contract is to be interpreted as a whole, with each provision given meaning and effect. Id.

> Section 7.2(i) states in relevant part:
>
> The Sellers, subject to the conditions and provisions herein set forth, jointly and severally agree to indemnify, defend, and hold harmless Buyer... from and against all demands, claims, actions or causes of action, assessments, losses, damages, liabilities, costs and reasonable expenses, including without limitation, interest, penalties and reasonable attorneys' fees and expenses (collectively, "Claims"), asserted against or imposed upon or incurred by Buyer resulting from, relating to, or by reason of....

However, Section 7.2(v) states in relevant part:

> If the party seeking indemnification (the "Claiming Party") shall be presented with or have actual notice of any action, claim or demand which gives rise (or may give rise) to a claim for indemnification under this section 7.2 against

---

[2] Interestingly, in the memorandum in support of their motion to dismiss, movants Richard Davis, Daryl Boyd and Diane Feldman make no reference whatsoever to section 7.2(i). In fact, in their view "the only language in the contract concerning defense of any claim is found in section 7.2(v)...."

> another party (the "Indemnifying Party"), then the Claiming Party shall within 30 days thereafter notify the Indemnifying Party in writing thereof (which notice shall, to the extent possible, specify the details of the claim), it being understood and agreed that any delay of the Claiming Party to so notify the Indemnifying Party shall not relieve the Indemnifying Party from liability hereunder, except and solely to the extent the Indemnifying Party is damaged by such delay. Following such notice, the Indemnifying Party shall have the right, after acknowledging in writing to the Claiming Party that the Indemnifying Party is indemnifying the Claiming Party, at its sole cost and expense, to contest or defend such action claim or demand, through attorneys, accountants or other of its own choosing, and satisfactory to the Claiming Party, and in the event it elects to do so, it shall promptly notify the Claiming Party of its intent to contest or defend such action, claim or demand.

Clearly, section 7.2(i) unambiguously provides that by entering into the stock purchase agreement, the Sellers have undertaken the obligation of defending the Buyer (Nailite) against all claims. There are no words of limitation modifying the duty to defend in this provision. The phrase "subject to the conditions and provisions herein set forth" is referring to within section 7.2(i). Thus, the movants' reading of section 7.2(v) would render section 7.2(i) meaningless, which is probably why they disavowed its existence in their memorandum.

A fair reading of Section 7.2(v) is that after the Claiming Party (here, Nailite) notifies the Indemnifying Party (here, the Sellers) of a claim, the Sellers, after acknowledging in writing that it will indemnify, may choose to try to minimize its indemnification obligation by defending, at its own cost, the claim or demand against Nailite that is the basis of the demand for indemnification. Alternatively, the Sellers, after acknowledging the right to indemnify, could simply step in and settle the claim, thereby minimizing the amount of the indemnification claim by reducing litigation expenses. According to Nailite, section 7.2(v) should be read as allowing the Sellers the right to exercise its defense of the Claiming Party with attorneys, accountants and other agents of its own choosing. This Court agrees with Nailite for two reasons. First, the plain

language of section 7.2(v) communicates to the reader that it is concerned with the Sellers' right to utilize attorneys, accountants and other agents of its own choosing. Second, reading section 7.2(v) as Nailite proposes gives full effect to the plain meaning of 7.2(i); that the Sellers have agreed to defend Nailite against all claims and actions. Moreover, whatever section 7.2(v) means, it does not begin to operate until the Sellers have acknowledged their obligation to indemnify. That has not happened here!

In short, the Sellers have not demonstrated that based on its third-party complaint and the language of the stock purchase agreement, Nailite cannot prove any set of facts in support of its claim that the stock purchase and assumption of liabilities agreements impose a duty to defend upon the Sellers. The motion to dismiss on the grounds that the stock purchase agreement does not impose a duty to defend on the Sellers is DENIED.

**The Duty to Indemnify**

As a general rule, the Seventh Circuit has instructed that a claim of the duty to indemnify is not ripe for adjudication until the underlying liability is established. <u>Lear Corp. v. Johnson Elec. Holdings</u>, 353 F.3d 580, 583 (7th Cir. 2003). United States District Courts are established under Article III of the United States Constitution. Article III requires a plaintiff to show that there exists an actual case or controversy where distinct legal rights are being affected so as to avoid the issuance of rulings that are merely advisory and hypothetical. The ripeness doctrine has both a constitutional component based on Article III "case or controversy" concepts and a prudential component based on the discretionary power of the court to refuse review for policy concerns. In its most rudimentary form, ripeness determines whether a particular dispute has developed to a point that merits decision. "The central concern [of the ripeness doctrine] is

whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." 13A Wright, Miller & Cooper, Federal Practice & Procedure: Civil 2d § 3532, at 112 (1984). The Supreme Court has noted that ripeness turns upon "the fitness of the issues for judicial decision" and "the hardship to the parties of withholding court consideration." Pacific Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n, 461 U.S. 190, 201 (1983).

In Bankers Trust Co. v. Old Republic Ins. Co., the Seventh Circuit found an exception to the general rule that indemnification claims are not ripe for adjudication until liability is established. 959 F.2d 677, 681 (7th Cir. 1992). Bankers Trust instructs that where the plaintiff's legally protected interest in a recovery is at jeopardy before the underlying claim is resolved, an exception to the general rule exists that does not offend the doctrine of ripeness. Id. at 682. The Court noted that Article III only requires a probabilistic injury. Id. Moreover, the Court explained that the possibility of no obligation to indemnify ever occurring weighed less on the constitutional component of ripeness than it did on the prudential component based upon the "district court judge's exercise of his equitable discretion to grant or withhold declaratory relief" and to accelerate or retard his consideration of the third-party suit simultaneously with the primary suit. Id. at 681.

In GNB Battery Tech., Inc. v. Gould, Inc., the Seventh Circuit stated that "the question of CERCLA liability and the interpretation of any indemnification agreement among the parties liable for the clean-up are inextricably related." 65 F.3d 615, 621 (7th Cir. 1995). The Court went on to re-emphasize that district courts exercise considerable discretion in determining the appropriateness of declaratory relief. Id. The proper test to be utilized when determining "the

existence of an actual controversy in the context of a declaratory judgment action is 'whether ⋯ there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" Id. at 620 (quoting Nuclear Eng'g Co. v. Scott, 660 F.2d 241, 251-2 (7th Cir. 1981)).

Here, a real and immediate controversy exists between the two parties. Nailite has been sued for environmental harms committed in connection with its ownership of the Amforge Property. Given the broad sweep of CERCLA liability, there is a sufficient probability that Nailite could be found liable. The Sellers have already expressed their unwillingness to defend or indemnify Nailite. While there is a possibility of an advisory opinion, the pending harm to Nailite is sufficiently immediate and real to justify determining whether the Sellers are obligated to indemnify Nailite.

Having established that it is within the equitable discretion of this court to consider a duty to indemnify claim along with a duty to defend claim, the question is now whether this Court should exercise such discretion. First, because this Court must determine whether the stock purchase agreement imposes a duty to defend upon the Sellers, judicial economy would be well served by determining the duty to indemnify now, since there is an apparent overlap in the evidence and witnesses used to litigate each claim. Second, this is a third-party suit where the primary action is before this Court, as opposed to similar cases where the primary litigation was pending in state courts. See e.g. Lear Corp. v. Johnson Elec. Holdings Ltd., 353 F.3d 580 (7th Cir. 2003); Molex Inc. v. Wyler, 334 F.Supp.2d 1083 (N.D.Ill. 2004). Therefore, there is no danger of offending any prevailing notions of comity or federalism. Nor would this Court have to expend much judicial time and resources to consider the duty to indemnify now.

The motion to dismiss Nailite's third-party complaint on the grounds that the duty to indemnify claim is not ripe for adjudication is DENIED.

**Estate of Wilfred Davis' Motion to Dismiss**

The Estate of Wilfred Davis brought an additional ground for dismissal based upon an Illinois law barring recovery of any claim against an estate of a deceased person not filed within a specified period of time following notice. Rule 8(c) of the Rules of Federal Procedure lists statute of limitations as an affirmative defense. The earliest time to consider an affirmative defense is normally in a Rule 12(c) motion for judgment on the pleadings; after a responsive pleading has been filed. Mosely v. Bd. of Educ. of the City of Chicago, 434 F.3d 527, 533 (7th Cir. 2006). The Plaintiff could, of course, plead himself out of court by alleging facts that on their face establish that the limitations period has been exceeded. That is not the case here. This court will not dismiss a complaint in instances where such dismissal would be tantamount to forcing a plaintiff to plead allegations to deny an affirmative defense.

Defendant's motion to dismiss on the grounds of statute of limitations is DENIED without prejudice to the Defendants' right to raise this issue at the proper time and pursuant to the appropriate subsection of the Federal Rules of Civil Procedure.

**CONCLUSION**

For the foregoing reasons, the Sellers' motions to dismiss are **DENIED.** The Estate of Wilfred Davis' motion to dismiss is **DENIED** in regard to Illinois law barring recovery of any claim against the Estate not filed within a specified period of time following notice. This denial

is made without prejudice to the Estate's right to raise this issue at the proper time and pursuant to the appropriate subsection of the Federal Rules of Civil Procedure.

Enter:

/s/ David H. Coar
_____
David H. Coar
United States District Judge

Dated: **November 28, 2006**