IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**

JAN 17 2008
Jan 17 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| CITY OF CHICAGO, a Municipal Corporation, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 05 C 5148 |
| ) | |
| ARVINMERITOR, INC.; ) | Judge Coar |
| NAILITE INTERNATIONAL, INC., ) | |
| a Delaware corporation; and ) | Magistrate Judge Nolan |
| COMMONWEALTH EDISON COMPANY, ) | |
| an Illinois Corporation, ) | |
| ) | |
| Defendants, ) | |
| _____ ) | |
| NAILITE INTERNATIONAL, INC. ) | |
| a Delaware corporation, ) | |
| ) | |
| Third-Party Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| ELIZABETH F. DAVIS, EXECUTOR OF THE ) | |
| ESTATE OF WILFRID E. DAVIS, ) | |
| DECEASED; ELIZABETH F. DAVIS; ) | |
| RICHARD A. DAVIS; DARYL A. BOYD; ) | |
| DIANE JOSEPH FELDMAN and DALLAS M. ) | |
| CRICK, ) | |
| ) | |
| Third-Party Defendants, ) | |
| _____ ) | |
| RICHARD A. DAVIS, DARYL A. BOYD and ) | |
| DIANE JOSEPH FELDMAN, ) | |
| ) | |
| Rule 14(a) Claimants, ) | |
| vs. ) | |
| ) | |
| HINSHAW & CULBERTSON, LLP, ) | |
| DOVEBID, INC. and INTERNATIONAL ) | |
| FORGING EQUIPMENT CORPORATION, ) | |
| ) | |
| Rule 14(a) Respondents. ) | |
| ) | |

## CONSENT DECREE

### TABLE OF CONTENTS

I.       Background

II.      Jurisdiction

III.     Parties Bound

IV.      Definitions

V.       General Provisions

VI.      Performance of the Work by the City

VII.     Dispute Resolution

VIII.    Covenants Not to Sue Cashout Settling Defendants by City

IX.      Covenants by Cashout Settling Defendants

X.       Effect of Settlement; Contribution Protection

XI.      Retention of Records

XII.     Notices and Submissions

XIII.    Retention of Jurisdiction

XIV.     Appendices

XV.      Modification

XVI.     Void

XVII.    Signatories/Service

XVIII.   Final Judgment

## I. BACKGROUND

A.    The City of Chicago ("City" or "Plaintiff") filed a complaint in this matter pursuant to Section 107 of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9607; Section 22.2(f) of the Illinois Environmental Protection Act, 415 ILCS 5/22.2 (f); Section 11-4-1500 of the City of Chicago Municipal Code; Sections 7-28-060 and 7-28-450 of the City of Chicago Municipal Code; Section 1-20-020 of the City of Chicago Municipal Code; and under common-law public nuisance.

B.    The City in its complaint seeks, inter alia, injunctive relief, fines, and damages in connection with the Cashout Settling Defendants' alleged generation, release, disposal, and/or storage of hazardous substances and other waste at a site generally known as the "Amforge Site" (as defined below).

C.    The Parties in this matter other than the City asserted various claims and defenses arising out of the claims asserted by the City in its complaint, as is reflected on the official docket and as set forth in each Party's respective pleadings.

D.    In June 1999, the City entered the Amforge Site in the Illinois Environmental Protection Agency's ("IEPA") Site Remediation Program ("SRP"). The City has since performed cleanup activities in accordance with IEPA-approved Remedial Action Plans ("RAP" or "RAPs") and will continue to perform Future Response Actions and cleanup activities at the Amforge Site.

E.    The Cashout Settling Defendants that have entered into this Consent Decree do not admit any liability to the City or to each other arising out of the transactions or occurrences alleged in the complaint, or as alleged in any other pleading made by any other Party, nor do they acknowledge that the release or threatened release of hazardous substance(s) at or from the Amforge Site constitutes an imminent or substantial endangerment to the public health or welfare or the environment.

F.    The City represents that it has undertaken an investigation of the Amforge Site and the past and present ownership thereof. Based on the foregoing, the City represents that it has no knowledge of any person, public or private entity, or governmental body that would or should be a party to this matter in order to fully adjudicate the claims released hereby. Based on information presently available to the City and the Cashout Settling Defendants, all parties that the City could locate and should or could be added to this action have been added and no additional parties that should be added to this action have been identified.

G.    The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and implementation of this Consent Decree will expedite the cleanup of the Amforge Site and will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, it is hereby Ordered, Adjudged, and Decreed:

## II. JURISDICTION

1.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. §§ 9607 and 9613(b). This Court also has personal jurisdiction over the Parties. Solely for the purposes of this Consent Decree and the underlying complaint, Cashout Settling Defendants waive all objections and defenses that they may have to jurisdiction of the Court or to venue in this District. Cashout Settling Defendants shall not challenge the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.  The Cashout Settling Defendants reserve any objections and defenses they may have to jurisdiction of the Court or venue in this District for actions not otherwise addressed in this Consent Decree.

## III. PARTIES BOUND

2.     This Consent Decree applies to and is binding upon the City and upon the Cashout Settling Defendants (as defined below). Any change in ownership or corporate status of any Party including, but not limited to, any transfer of assets or real or personal property, shall in no way alter such Party's rights or responsibilities under this Consent Decree.

## IV. DEFINITIONS

3.     Unless otherwise expressly provided herein, terms used in this Consent Decree that are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them in CERCLA or in such regulations. Whenever terms listed below are used in this Consent Decree or in the appendices attached hereto and incorporated hereunder, the following definitions shall apply:

a.     "Amforge Site" shall mean the Amforge Site, encompassing approximately 18 acres, bounded by 118th and 119th Streets and Loomis and Racine Streets, in the City of Chicago, Cook County, Illinois, together with any location(s) to which hazardous substances released or disposed at the Amforge Site have come to be located.  The general location of the Amforge Site is depicted on the map attached hereto as Appendix A.

b.     "Cashout Settling Defendant" or "Cashout Settling Defendants" shall mean the Party or those Parties listed in Appendix B together with their heirs, Successors and Assigns (as defined below), and insurers.

c.     "CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601, *et seq.*

d.     "Consent Decree" shall mean this Consent Decree and all appendices attached hereto (listed in Section XIV). In the event of conflict between this Consent Decree and any appendix, this Consent Decree shall control.

e.     "Day" shall mean a calendar day unless expressly stated to be a working day. "Working Day" shall mean a day other than a Saturday, Sunday, or Federal holiday. In

computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or Federal holiday, the period shall run until the close of business of the next working day.

   f. "Effective Date" shall be the date on which the Court approves and enters this Consent Decree.

   g. "U. S. EPA" shall mean the United States Environmental Protection Agency and any successor departments or agencies of the United States.

   h. "Future Response Costs" shall mean all costs of response incurred in connection with Future Response Actions taken after the Effective Date of this Consent Decree. Such Future Response Costs include, but are not limited to, response costs as required to perform or finance any orders or directives from the U. S. EPA or the IEPA with respect to the Amforge Site in existence as of the Effective Date of this Consent Decree, as well as any other U. S. EPA or IEPA orders, directives or agreements with respect to the Amforge Site that may come into effect after the Effective Date of this Consent Decree.

   i. "Future Response Actions" shall mean any and all actions for response as defined in Section 101(25) of CERCLA, 42 U.S.C. § 9601(25) and Subpart E of the National Contingency Plan ("NCP"), 40 C.F.R. §§ 300.40, *et seq.*, state statutes and regulations, City ordinances, and common law principles including, without limitation, operation and maintenance activities conducted in connection with the Amforge Site, enforcement activities related to the Amforge Site, and oversight activities conducted in connection with the Amforge Site performed or to be performed after the Effective Date of this Consent Decree.

   j. "IEPA" shall mean the Illinois Environmental Protection Agency and any successor departments or agencies of the State of Illinois.

   k. "Matters Addressed" in this Consent Decree are: (i) all response actions taken or to be taken and all Response Costs incurred or to be incurred by the City related to the Amforge Site; (ii) Past or Future Response Actions and Past or Future Response Costs; and (iii) any and all claims, causes of action, liabilities, and/or damages asserted or could be asserted by any Party in this matter or otherwise related to or arising out of the Amforge Site. "Matters Addressed" excludes those potential claims and causes of action related to the Amforge Site that are otherwise reserved elsewhere in this Consent Decree.

   l. "Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral or an upper case letter.

   m. "Party" or "Parties" shall mean the City of Chicago and the Cashout Settling Defendants.

   n. "Past Response Actions" shall mean any and all actions for response as defined in Section 101(25) of CERCLA, 42 U.S.C. § 9601(25) and Subpart E of the National Contingency Plan ("NCP"), 40 C.F.R. §§ 300.400, *et seq.*, state statutes and regulations, City ordinances, and common law principles including, without limitation, operation and maintenance activities conducted in connection with the Amforge Site, enforcement activities related to the

Amforge Site, and oversight activities conducted in connection with the Amforge Site, performed or being performed on or before the Effective Date of this Consent Decree.

o.    "Past Response Costs" shall mean all costs incurred by the City or any other Person in connection with Past Response Actions at the Amforge Site.

p.    "Person" shall have the meaning set forth in 42 U. S.C. § 9601(21).

q.    "RAP" shall mean the Amforge Site Remedial Action Plan or Plans and any appendices thereto approved or to be approved by IEPA.

r.    "Response Costs" shall mean collectively "Past Response Costs" and "Future Response Costs" as defined herein.

s.    "Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

t.    "SRP" shall mean the Illinois Environmental Protection Agency's Site Remediation Program.

u.    "State" shall mean the State of Illinois.

v.    "Successors and Assigns" shall mean a Party's past, present and future predecessors, affiliates, successors and assigns, and the shareholders, partners, members, directors, officers, agents and employees of each of them, to the extent that alleged liability for these persons or entities is or may be based on the Party's alleged responsibility for the Amforge Site.

w.    "Waste Material" shall mean any toxic or hazardous gaseous, liquid or solid material or waste that may or could pose a hazard to the environment or human health or safety including (i) any "hazardous substances as defined by CERCLA, (ii) any "extremely hazardous substance," "hazardous chemical," or "toxic chemical" as those terms are defined by the federal Emergency Planning and Community Right-to-Know Act, 42 U.S.C. §§ 1101 *et seq.*, (iii) any "hazardous waste," as defined under the federal Solid Waste Disposal Act, as amended by the Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901 *et seq.*, (iv) any "pollutant," as defined under the federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.*, and (v) any other regulated substance or waste under any environmental laws or regulations that have been enacted or issued by any federal, state or local governmental authorities concerning protection of human health and the environment.

x.    "Work" shall mean all activities the City of Chicago is required to perform under this Consent Decree.

## V. GENERAL PROVISIONS

4.    Objectives of the Parties. The objectives of the Parties in entering into this Consent Decree are to protect public health or welfare and the environment at the Amforge Site, to reimburse certain Response Costs of the City, and to resolve the claims of the City against the

Cashout Settling Defendants, and the claims of all other Parties asserted in this matter, all as provided in this Consent Decree. As between the Parties to this Consent Decree, each Party shall bear its own costs and attorneys fees.

5.     <u>Commitments by the Cashout Settling Defendants.</u>

a.     The Cashout Settling Defendants' commitments for Response Costs at the Amforge Site total the amount set forth in Appendix B. Except as otherwise provided in Appendix B, within 30 Days after the Effective Date of this Consent Decree, the Cashout Settling Defendants (or, where indicated, their insurers) shall pay the amounts set forth in Appendix B to the City of Chicago, where indicated, in the form of a check payable to O'Keefe, Lyons & Hynes, LLC, and delivered to:

> Kevin B. Hynes
> O'Keefe, Lyons & Hynes, LLC
> 30 N. LaSalle St., Suite 4100
> Chicago, Illinois 60602

Payments by Commonwealth Edison to the City and payments by any Cashout Settling Defendant to a Party other than the City shall be in accordance with the terms of the settlements reached by those parties.

b.     The failure of any Cashout Settling Defendant to pay the amount set forth in Appendix B within 30 Days after the Effective Date of this Consent Decree shall be deemed a violation of this Consent Decree that is not subject to dispute resolution.

c.     This Consent Decree is the product of arms-length negotiations. The City and the Cashout Settling Defendants were represented by counsel or had the opportunity to consult with counsel experienced under and with knowledge about CERCLA; the Amforge Site; Response Costs incurred to remediate the Amforge Site; facts and law relating to the claims and defenses asserted by and between the Parties; and the methods of allocating Response Costs among co-liable potentially responsible parties.

## VI. PERFORMANCE OF THE WORK BY THE CITY

6.     <u>Remedial Action.</u>

a.     The City shall continue to implement the RAPs and any other work plans as approved by the IEPA until the IEPA has issued a SRP No Further Remediation letter ("NFR") covering all recognized environmental conditions and related contaminants of concern for the Amforge Site:

i.     that allows unrestricted use of the Amforge Site because it has been remediated to meet or exceed the SRP Tiered Approach to Corrective Action Objectives ("TACO") residential standards; or

ii.     that allows restricted development of the Amforge Site for commercial/industrial uses consistent with SRP TACO commercial/industrial standards through the use of institutional or engineering controls as allowed under the SRP and as approved by IEPA that are protective of human health and the environment.

b.     The City shall record the NFR letter with the Cook County Recorder of Deeds as set forth in the NFR and SRP.

c.     Within 60 days after the Effective Date of this Consent Decree, the City shall record with the Cook County Recorder of Deeds a copy of this Consent Decree in the chain of title of all of the properties that comprise the Amforge Site.

## VII. DISPUTE RESOLUTION

7.     a.     Any dispute that arises under or with respect to this Consent Decree shall in the first instance be the subject of informal negotiations between the Parties to the dispute. The period for informal negotiations shall not exceed 20 Days from the time the dispute arises, unless it is modified by written agreement of the Parties to the dispute. The dispute shall be considered to have arisen upon receipt by one Party of a written notice of dispute sent by another Party, which notice shall state that it is being sent pursuant to this provision.

b.     In the event that the Parties cannot resolve a dispute by informal negotiations under the preceding Paragraph, then the Parties shall serve upon each other and this Court a written Statement of Position on the matter in dispute, including, but not limited to, any factual data, analysis or opinion supporting that position and any supporting documentation relied upon by the Party. Within 14 Days, or such other time as may be set by this Court, this Court will conduct proceedings consistent with this Consent Decree to resolve said dispute. Any Party availing itself of this process shall not be deemed to have waived any other rights in law or equity.

## VIII. RELEASE AND COVENANTS NOT TO SUE CASHOUT SETTLING DEFENDANTS BY THE CITY

8.     In consideration of the payments that will be made by the Cashout Settling Defendants under the terms of this Consent Decree, and except as set forth in Paragraph 9 below, the City releases and covenants not to sue or to take any other legal or administrative action against the Cashout Settling Defendants related to the Amforge Site, including without limitation, all laws, statutes, regulations, ordinances, common law, claims, and allegations in the lawsuit captioned City of Chicago v. ArvinMeritor, Inc., et al, United States District Court, Northern District of Illinois, Eastern Division, Case No. 05 C 5148, or that could have been alleged in the lawsuit, the assertion of any claims pursuant to Sections 106 and 107(a) of CERCLA, Section 7003 of RCRA, any analogous State or City laws or ordinances, and common law relating to the Amforge Site. This release and covenant not to sue shall take effect as to each Cashout Settling Defendant upon that Cashout Settling Defendant making its respective payment as required by Paragraph 5 of Section V. This release and covenant not to sue extends only to the Cashout Settling Defendants as defined in this Consent Decree and does not extend to any other person.

9.      Provided that and conditioned upon the City having met its obligations under Section VI to perform the Work, the City reserves, and this Consent Decree is without prejudice to, the City's rights against Cashout Settling Defendants with respect to:

a.      claims based on a failure by any Cashout Settling Defendant to meet a requirement of this Consent Decree applicable to that Cashout Settling Defendant;

b.      claims related to the release or threat of release of Waste Material outside of the Amforge Site but related to Waste Material originally generated at the Amforge Site to the extent not caused or exacerbated by the City's demolition or remediation work conducted at the Amforge Site;

c.      claims arising from the past, present, or future disposal, release or threat of release of Waste Material outside of and unrelated to the Amforge Site;

d.      third-party toxic tort liability allegedly related to the Amforge Site;

e.      claims for natural resources damages brought pursuant to Section 107(f) of CERCLA, 42 U.S.C. § 9607(f), as it may be amended, or any other statute, law or regulation covering natural resource damages to the extent not caused or exacerbated by the City's demolition or remediation work conducted at the Amforge Site; and

f.      claims for reimbursement of Response Costs related to conditions at the Amforge Site previously unknown to the City or information previously unknown to the City, that the U.S. EPA or the IEPA determines indicates that the RAPs implemented at the Amforge Site are not protective of human health or the environment. The City shall be deemed to have known or should have known of any condition or information, including every contaminant, set forth in any report, memo, lab report, or other document related to the Amforge Site prepared by or for the City or provided to the City on or before the Effective Date of this Consent Decree. The Parties represent that they have made available all non-privileged documents in their possession relating or referring to the contamination at the Amforge Site and do not have any documents or information in their possession that is inconsistent with the documents and information made available.

## IX. COVENANTS BY CASHOUT SETTLING DEFENDANTS

10.     Covenant Not to Sue. Except for potential claims arising out of the reservations in Paragraph 9, Cashout Settling Defendants hereby covenant not to sue and agree not to assert any claims or causes of action against the City or against each other with respect to the Amforge Site, Past or Future Response Actions, and Past and Future Response Costs, and/or Matters Addressed, all as defined in this Consent Decree.

11.     Cashout Settling Defendants' Reservations of Rights. The Cashout Settling Defendants reserve, and this Consent Decree is without prejudice to, all rights against the City and against each other with respect to potential claims arising out of the reservations in Paragraph 9.

## X. EFFECT OF SETTLEMENT -- CONTRIBUTION PROTECTION

12.     Nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree. Each of the Parties expressly reserves any and all rights (including, but not limited to, any right to contribution), defenses, claims, demands, and causes of action which each Party may have with respect to any matter, transaction, or occurrence relating in any way to the Amforge Site against any person not a Party hereto.

13.     The Parties agree, and by entering this Consent Decree this Court finds, that the Cashout Settling Defendants are entitled, as of the Effective Date, to protection from contribution actions or claims as provided by CERCLA Sections 113(f)(2) and 122(h)(4), 42 U.S.C. §§ 9613(f)(2) and 9622(h)(4), for the Matters Addressed in this Consent Decree.

14.     The Cashout Settling Defendants agree that with respect to any suit or claim for contribution brought by them for matters related to this Consent Decree they will notify the City and other Cashout Settling Defendants in writing no later than 60 days prior to the initiation of such suit or claim. The Cashout Settling Defendants also agree that with respect to any suit or claim for contribution brought against them for matters related to this Consent Decree they will notify in writing the City and other Cashout Settling Defendants within 30 days of service of the claim and/or complaint on them.

15.     The City agrees that with respect to any suit or claim for contribution brought by it for matters related to this Consent Decree it will notify the Cashout Settling Defendants in writing no later than 60 days prior to the initiation of such suit or claim. The City agrees that with respect to any suit or claim for contribution brought against it for matters related to this Consent Decree it will notify in writing the Cashout Settling Defendants within 30 days of service of the claim and/or complaint on the City.

## XI. RETENTION OF RECORDS

16.     Until 5 years after the entry of this Consent Decree, the Parties shall preserve and retain all non-identical copies of records and documents (including records or documents in electronic form) now in their possession or control or which come into their possession or control that relate to the Amforge Site or to the liability of any other person under CERCLA with respect to the Amforge Site.

17.     At the conclusion of this document retention period, the Parties shall notify each other at least 90 days prior to the destruction of any such records or documents, and, upon good cause shown by any Party, the receiving Party shall deliver any such records or documents to the requesting Party. Any Party may assert that certain documents, records and other information are privileged under the attorney-client privilege or any other privilege recognized by federal law or Illinois law. If a Party asserts such a privilege, it shall provide the requesting Party with the following: (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of the author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the

subject of the document, record, or information; and (6) the privilege asserted. No documents, reports or other information created or generated pursuant to the requirements of the Consent Decree shall be withheld on the grounds that they are privileged.

18.     The Parties each hereby certify individually that, to the best of its knowledge and belief, after thorough inquiry, it has not altered, mutilated, discarded, destroyed or otherwise disposed of any records, documents or other information (other than identical copies) relating to the Amforge Site or to the commencement of Response Actions at the Amforge Site.

## XII. NOTICES AND SUBMISSIONS

19.     Whenever, under the terms of this Consent Decree, written notice is required to be given or a report or other document is required to be sent by one Party to another, it shall be directed to the individuals at the addresses specified in Appendix C, unless those individuals or their successors give notice of a change to the other Parties in writing. All notices and submissions shall be considered effective upon receipt, unless otherwise provided. Written notice as specified herein shall constitute complete satisfaction of any written notice requirement of the Consent Decree with respect to the City and Cashout Settling Defendants.

## XIII. RETENTION OF JURISDICTION

20.     This Court retains exclusive jurisdiction and venue over both the subject matter of this Consent Decree and the Parties for the duration of the performance of the terms and provisions of this Consent Decree for the purpose of enabling any of the Parties to apply to the Court at any time for such further order, direction, and relief as may be necessary or appropriate to enforce compliance with its terms, or to resolve disputes in accordance with Section VII (Dispute Resolution) hereof.

## XIV. APPENDICES

21.     The following appendices are attached to and incorporated into this Consent Decree:

"Appendix A" is a map depicting the general location of the Amforge Site.
"Appendix B" is the complete list of the Cashout Settling Defendant and the amount each Cashout Settling Defendant (or, where indicated, their insurers) is paying in settlement of these claims.
"Appendix C" is a list of names and addresses for purposes of complying with any notice provisions in this Consent Decree.
"Appendix D" is a copy of or list of related settlement agreements that the City and/or Cashout Settling Defendants have entered into for purposes of fully resolving this matter.

## XV. MODIFICATION

22.     There shall be no modification of this Consent Decree without written agreement of the Parties. Any such modification shall be subject to approval by the Court.

23.     Nothing in this Consent Decree shall be deemed to alter the Court's power to enforce this Consent Decree.

## XVI. VOID

24.     If for any reason the Court should decline to approve this Consent Decree in the form presented, the terms of the Consent Decree shall be void and may not be used as evidence in any litigation between the Parties.

## XVII. SIGNATORIES/SERVICE

25.     Each undersigned representative of a Cashout Settling Defendant to this Consent Decree and the representative of the City certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind such Party to this document.

26.     Each Cashout Settling Defendant hereby agrees not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree unless the City has notified the Cashout Settling Defendants in writing that it no longer supports entry of the Consent Decree.

27.     Each Cashout Settling Defendant shall identify, on the attached signature page, the name, address and telephone number of an agent who is authorized to accept service of process by mail on behalf of that Party with respect to all matters arising under or relating to this Consent Decree. Cashout Settling Defendants hereby agree to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including, but not limited to, service of a summons.

## XVIII. FINAL JUDGMENT

28.     This Consent Decree and its appendices constitute the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Consent Decree. The Parties acknowledge that there are no representations, agreements or understandings relating to the settlement other than those expressly contained in this Consent Decree.

29.     Except as otherwise provided herein, upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between and among the City and the Cashout Settling Defendants. The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. C. P. 54 and 58.

30.     All Parties to this Consent Decree hereby irrevocably waive any rights of appeal to any court or administrative agency upon the execution and entry of this Consent Decree by the Court.

## SIGNATURE PAGE

## CONSENT DECREE AND RELEASE

**IN WITNESS WHEREOF** the Parties, intending to be legally bound, execute this Agreement (in duplicate) by their duly authorized representatives.

CITY OF CHICAGO
DEPARTMENT OF PLANNING AND DEVELOPMENT

By: _Arnold Randall_

Date: _1/14/08_

CITY OF CHICAGO
CORPORATION COUNSEL

By: _Mara S. Georges_

Mara S. Georges, Corporation Counsel

Date: _1-16-08_

13

SIGNATURE PAGE

CONSENT DECREE AND RELEASE

IN WITNESS WHEREOF the Parties, intending to be legally bound, execute this Agreement (in duplicate) by their duly authorized representatives.


PARTY:    ArvinMeritor, Inc.


By:   Vernon G. Baker, II

Signature:   Vernon G. Baker, II

Title:   Senior Vice President & General Counsel


Date:   January 9, 2008

14

SIGNATURE PAGE

CONSENT DECREE AND RELEASE

IN WITNESS WHEREOF the Parties, intending to be legally bound, execute this Agreement (in duplicate) by their duly authorized representatives.

PARTY:     **Nailite International, Inc.**


By:        **Christopher A. Lawler**

Signature:

Title:     **Vice President**


Date:      **January 14, 2008**

## SIGNATURE PAGE

### CONSENT DECREE AND RELEASE

IN WITNESS WHEREOF the Parties, intending to be legally bound, execute this Agreement (in duplicate) by their duly authorized representatives.

PARTY: _Commonwealth Edison Company_

By: _Darryl M Bradford_

Signature: _[signature]_

Title: _Senior Vice President and General Counsel_

Date: _January 15, 2008_

SIGNATURE PAGE

CONSENT DECREE AND RELEASE

IN WITNESS WHEREOF the Parties, intending to be legally bound, execute this Agreement (in duplicate) by their duly authorized representatives.

PARTY: _DOVEBID, INC._

By: _JAMES SULLAR_

Signature: _[signature]_

Title: _VP and General Counsel_

Date: _1/10/08_

14

## SIGNATURE PAGE

### CONSENT DECREE AND RELEASE

IN WITNESS WHEREOF the Parties, intending to be legally bound, execute this Agreement (in duplicate) by their duly authorized representatives.

PARTY: _DIANE JOSEPH - FELDMAN_

By: _____

Signature: _Diane Joseph Feldman_

Title: _____

Date: _1 - 09 - 08_

## SIGNATURE PAGE

### CONSENT DECREE AND RELEASE

IN WITNESS WHEREOF the Parties, intending to be legally bound, execute this Agreement (in duplicate) by their duly authorized representatives.

PARTY: _RICHARD A. DAVIS_

By: _____

Signature: _Richard A. Davis_

Title: _____

Date: _January 10 - 2008_

## SIGNATURE PAGE

### CONSENT DECREE AND RELEASE

IN WITNESS WHEREOF the Parties, intending to be legally bound, execute this Agreement (in duplicate) by their duly authorized representatives.

PARTY: *Elizabeth Davis*

By: _____

Signature: *Elizabeth Davis*

Title: _____

Date: *Jan. 14, 2008*

14

SIGNATURE PAGE

CONSENT DECREE AND RELEASE

IN WITNESS WHEREOF the Parties, intending to be legally bound, execute this Agreement (in duplicate) by their duly authorized representatives.

PARTY: Daryl A. Boyd

By: _____

Signature: Daryl a Boyd

Title: _____

Date: 1-09-08

14

SIGNATURE PAGE

CONSENT DECREE AND RELEASE

IN WITNESS WHEREOF the Parties, intending to be legally bound, execute this Agreement (in duplicate) by their duly authorized representatives.

PARTY: _IFECO_

By: _____

Signature: _Robert T. Oziad by Kristie A. Oziad P.O.A. as Attorney in-fact_

Title: _IFECO ~ President_

Date: _1-14-08_

14

SIGNATURE PAGE

CONSENT DECREE AND RELEASE

IN WITNESS WHEREOF the Parties, intending to be legally bound, execute this Agreement (in duplicate) by their duly authorized representatives.

PARTY:      HINSHAW & CULBERTSON LLP


By:     Thomas L. Browne

Signature:    _Thomas L. Browne_

Title:    GENERAL COUNSEL


Date:     January 10, 2008


14

## APPENDIX A

## GENERAL SITE MAP



LEGEND

—— FORMER RAILROAD TRACKS

☐ FORMER STRUCTURE

☐ EAST PARCEL BOUNDARY

☐ WEST PARCEL BOUNDARY

☐ 30-FOOT BUFFER

100        0        100  FEET

WEST PULLMAN INDUSTRIAL
REDEVELOPMENT AREA -
STUDY AREA NO. 3, EAST PARCEL
CHICAGO, ILLINOIS

FIGURE A-2
SITE LAYOUT

Tetra Tech EM Inc.

**APPENDIX B**

## APPENDIX B - Payments

1.    **By Cashout Settling Defendants**
      **To the City of Chicago**

| Cashout Settling Defendant | Amount |
|---|---|
| ArvinMeritor, Inc. | $ 600,000.00 |
| Commonwealth Edison | $ 500,000.00 |
| DoveBid | $ 8,333.33 |
|     ACE, on account of DoveBid | $ 60,000.00 |
|     Travelers, on account of DoveBid | $ 50,000.00 |
|     Amerisure, on account of DoveBid | $ 35,000.00 |
| IFECO | $ 8,333.34 |
|     ACE, on account of IFECO | $ 60,000.00 |
| Nailite International, Inc. | $ 8,333.33 |
|     ACE, on account of Nailite | $ 60,000.00 |
| The Estate of Wilfrid E. Davis | $ 1.00 and other valuable consideration |
| Dallas Crick | $ 1.00 and other valuable consideration |

2.    **By Cashout Settling Defendants**
      **To Other Indicated Parties**

| Cashout Settling Defendant | Amount | Payee |
|---|---|---|
| Richard A. Davis | $ 20,000.00 | Nailite International, Inc. |
| Daryl Boyd | $ 20,000.00 | Nailite International, Inc. |
| Diane Joseph Feldman | $ 20,000.00 | Nailite International, Inc. |
| Elizabeth Davis | $ 15,000.00 | Nailite International, Inc. |
| Hinshaw & Culbertson | $ 10,000.00 | Richard A. Davis, Daryl Boyd, and Diane Joseph Feldman, collectively. |

## APPENDIX C

## NOTICES

**As to the City:**

Commissioner
City of Chicago Department of Planning and Development
121 N. LaSalle St., 9th floor
Chicago, IL 60602

**With a Copy to:**

Kevin B. Hynes
O'Keefe, Lyons and Hynes, LLC
30 N. LaSalle St., Suite 4100
Chicago, IL 60602

**And a Copy to:**

Amber Achilles Ritter
City of Chicago Department of Law
30 N. LaSalle St., 9th floor
Chicago, IL 60602

**As to Commonwealth Edison:**

Joan Fencik
Vice President & Deputy General Counsel
Exelon Corporation
10 S. Dearborn Street
P.O. Box 5930
Chicago IL 60680-5930

**With a Copy to:**

Terance A. Gonsalves
Sonnenschein Nath & Rosenthal LLP
7800 Sears Tower
233 South Wacker Drive
Chicago, IL 60606

**As to ArvinMeritor, Inc.:**

Jerome I. Maynard
Dykema Gossett PLLC
10 S. Wacker Drive, Suite 2300
Chicago, IL 60606

**As to Nailite International, Inc.:**

Andrew P. Foster
Drinker Biddle, LLP
One Logan Square
18th & Cherry Streets
Philadelphia, PA 19130

**As to Daryl A. Boyd, Richard A. Davis
and Diane Joseph Feldman:**

Sherwin D. Abrams
Abrams & Chapman
321 S. Plymouth Ct.
Suite 1200
Chicago, IL 60604-3990

Daryl A. Boyd
49 South Poteet
Palatine, IL 60067

Richard A. Davis
721 E. Dilido Drive
Miami Beach, FL 33139

Diane Joseph Feldman
1314 Lake Shore Drive North
Barrington, IL 60010

**As to Dovebid, Inc.:**

Eric D. Kaplan
Kaplan Papadakis & Gournis, LLP
180 N. LaSalle Street, Suite 2108
Chicago, IL 60601

**As to International Forging
Equipment Corp.:**

Robert W. McIntyre
McIntyre, Kahn & Kruse Co., LPA
1301 East Ninth Street, Suite 1200
Cleveland, OH 44114

**As to Dallas M. Crick:**

Norman James Lerum
100 W. Monroe Street, Suite 2100
Chicago, IL 60603

**As to Hinshaw & Culbertson, LLP:**

Michael John Borree
Donohue, Brown, Mathewson & Smyth
140 S. Dearborn St., Suite 700
Chicago, IL 60606

**As to Elizabeth Davis:**

Bradley H. Foreman
Law Offices of Bradley H. Foreman, P.C.
6914 W. North Avenue
Chicago, IL 60707

**As to the Estate of Wilfrid E. Davis:**

Sherwin Zaban
Jacobs and Rosenweig
33 N. LaSalle St., Suite 2131
Chicago, IL 60602

## **APPENDIX D**

### **SETTLEMENT AGREEMENTS**

1.  Global Settlement between the City of Chicago and Commonwealth Edison Company (not attached hereto).

2.  December 13, 2007 settlement between Nailite International, Inc., Richard A. Davis, Daryl Boyd and Diane Joseph Feldman (attached).

3.  December 13, 2007 settlement between Nailite International, Inc. and Elizabeth F. Davis (attached).

4.  Settlement agreement between Richard A. Davis, Diane J. Feldman, and Daryl A. Boyd with Hinshaw & Culbertson, LLP.

### Settlement Agreement

This Settlement Agreement is entered into as of this 13th day of December, 2007, by and between Richard A. Davis, Daryl A. Boyd, and Diane Joseph Feldman (collectively, the "Third-Party Defendants"), and Nailite International, Inc., a Delaware corporation ("Nailite").

### Witnesseth:

**Whereas**, the City of Chicago filed a complaint against Nailite and others in the United States District Court for the Northern District of Illinois, Eastern Division, styled as City of Chicago v. ArvinMeritor, Inc., et. al., Case No. 05 C 5148 (the "Litigation"); and

**Whereas**, in its complaint the City alleges a number of claims against Nailite, all of which claims arise out of the alleged release, disposal, or storage of hazardous substances and other waste at property in Chicago commonly known as the Amforge Site; and

**Whereas**, Nailite has filed a third-party complaint against the Third-Party Defendants and others in the Litigation in which Nailite alleges that the Third Party Defendants are obligated to defend and indemnify Nailite pursuant to (i) a Stock Purchase Agreement dated April 15, 1988 (the "1988 SPA") and (ii) a document entitled Assumption of Liabilities also dated April 15, 1988; and

**Whereas**, the Third-Party Defendants have denied all liability to Nailite; and

**Whereas**, the Third-Party Defendants and Nailite (collectively, the "Parties") desire to avoid the expense and uncertainty of continuing the Litigation, and desire to enter into this Agreement to resolve all claims heretofore existing between them and which may hereafter arise and which are directly or indirectly related to the Amforge Site, including, but not limited to, all claims set forth by any of the litigants in the Litigation.

**Now, therefore,** in consideration of the above premises, the covenants and releases contained herein and their agreement to settle any and all disputes among or between them arising out of or in any way related to the Litigation, the Parties hereby agree as follows:

1.      Within 15 days after the entry of the Consent Decree as more fully defined in Paragraph 11 below, each of the Third-Party Defendants will pay Nailite the sum of twenty thousand dollars ($20,000.00), for a total payment sum from the Third-Party Defendants of sixty thousand dollars ($60,000.00).

2.      This Agreement does not constitute, is not intended to constitute, and should not be construed as constituting an admission or evidence of fault, wrongdoing or liability by any party to this Agreement, but rather reflects the desire of the Parties to resolve all claims in a fair and amicable manner.

3.      Each of the Parties shall bear its own costs, expenses, and attorneys' fees heretofore incurred in the Litigation.

4.      Each of the Parties acknowledges that (i) this Agreement has been negotiated and drafted by counsel for each of the Parties; (ii) the terms and conditions herein set forth are fair, adequate, reasonable, and proper; and (iii) taking into account the different positions of the Parties and the expenses and uncertainties of litigation is in each of the Parties' respective best interests.

5.      Nailite hereby fully and completely releases and discharges the Third-Party Defendants, and each of them, of, from and against all demands, claims, actions, causes of action, suits, debts, penalties, damages, liabilities, costs and expenses, whether in contract or tort or at law or in equity that Nailite may have, could have or hereafter may have and which, directly or indirectly, arise out of or are related to, or which are directly or indirectly alleged to arise out of or be related to, the Amforge Site, including, but not limited to, those claims asserted by Nailite in the Litigation (collectively, "Amforge Related Claims").

6.      The Third-Party Defendants, and each of them, hereby fully and completely release and discharge Nailite of, from and against all demands, claims, actions, causes of action, suits, debts, penalties, damages, liabilities, costs and expenses, whether in contract or tort or at law or in equity that the Third-Party Defendants, and each of them may have, could have or hereafter may have and which, directly or indirectly, arise out of or are related to, or which are directly or indirectly alleged to arise out of or be related to, the Amforge Site.

7.      Whenever possible, each provision of this Agreement shall be interpreted in such a manner as to be effective and valid under applicable law, but if any provision of this Agreement shall be prohibited or invalid under law, such provision shall be ineffective only to the extent of such provision, the sections and provisions of this Agreement being severable.

2

8.     This Agreement shall be binding upon and shall inure to the benefit of each of the Parties and each of their respective predecessors, successors, executors, administrators, heirs, representatives, members, affiliates, shareholders, directors, officers, employees, assigns, and attorneys.

9.     No change in, modification to, or amendment of any provision of this Agreement shall be valid or binding unless it is in writing, signed by the party to be bound thereto.

10.     This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of Illinois. Each of the Parties hereby submits to the jurisdiction of the courts located in the State of Illinois with respect to the construction and enforcement of this Agreement.

11.     This Agreement sets forth the entire agreement and understanding of the Parties in respect of the settlement and supersedes all prior agreements, arrangements, and understandings related to settlement of the Litigation; provided that, it is agreed among the Parties that this Settlement Agreement is specifically conditioned upon the Court approving and entering a Consent Decree in substantially the form attached here as Attachment A, and in the event the Consent Decree is not so approved and entered prior to December 31, 2008 this Settlement Agreement shall be null and void.

12.     Each of the Parties agrees to perform any further acts and to execute any further documents that may be reasonably necessary to carry out the terms and provisions of this Agreement.

13.     Nailite covenants and agrees not to sue any of the parties to the 1988 SPA with respect to any Amforge Related Claims; provided, however, that Nailite may sue any such party who first sues Nailite, and Nailite may assert any and all claims that it may have against such party, including without limitation, any Amforge Related Claims.

3

14.    This Agreement may be executed in counterparts. Facsimile signatures shall have the same force and effect as original signatures.


_____                   _Daryl A. Boyd_ (signature)
**Richard A. Davis**                       **Daryl A. Boyd**

                                           **Nailite International, Inc.**

_____
**Diane Joseph Feldman**                   **By:**_____
                                              Title:

4

14.     This Agreement may be executed in counterparts. Facsimile signatures shall have the same force and effect as original signatures.

_Richard A. Davis_ (signature)

Richard A. Davis

Daryl A. Boyd

Nailite International, Inc.

Diane Joseph Feldman

By:_____
    Title:

4

14. This Agreement may be executed in counterparts. Facsimile signatures shall have the same force and effect as original signatures.

_____
Richard A. Davis

*Diane Joseph Feldman*
Diane Joseph Feldman

_____
Daryl A. Boyd

Nailite International, Inc.

By:_____
     Title:

4

14.    This Agreement may be executed in counterparts. Facsimile signatures shall have the same force and effect as original signatures.


_____          _____
**Richard A. Davis**                         **Daryl A. Boyd**

                                             **Nailite International, Inc.**

_____
**Diane Joseph Feldman**                  By:_____
                                             Title:  Vice President


4

### Settlement Agreement

This Settlement Agreement is entered into as of this 13th day of December, 2007, by and between Elizabeth F. Davis ("Davis"), and Nailite International, Inc., a Delaware corporation ("Nailite").

### Witnesseth:

**Whereas,** the City of Chicago filed a complaint against Nailite and others in the United States District Court for the Northern District of Illinois, Eastern Division, styled as City of Chicago v. ArvinMeritor, Inc., et. al., Case No. 05 C 5148 (the "Litigation"); and

**Whereas,** in its complaint the City alleges a number of claims against Nailite, all of which claims arise out of the alleged release, disposal, or storage of hazardous substances and other waste at property in Chicago commonly known as the Amforge Site; and

**Whereas,** Nailite has filed a third-party complaint against Davis and others in the Litigation in which Nailite alleges that Davis and others are obligated to defend and indemnify Nailite pursuant to (i) a Stock Purchase Agreement dated April 15, 1988 (the "1988 SPA") and (ii) a document entitled Assumption of Liabilities also dated April 15, 1988; and

**Whereas,** the Davis has denied all liability to Nailite; and

**Whereas,** Davis and Nailite (collectively, the "Parties") desire to avoid the expense and uncertainty of continuing the Litigation, and desire to enter into this Agreement to resolve all claims heretofore existing between them and which may hereafter arise and which are directly or indirectly related to the Amforge Site, including, but not limited to, all claims set forth by any of the litigants in the Litigation.

**Now, therefore,** in consideration of the above premises, the covenants and releases contained herein and their agreement to settle any and all disputes among or between them arising out of or in any way related to the Litigation, the Parties hereby agree as follows:

1. Within 15 days after the entry of the Consent Decree as more fully defined in Paragraph 11 below, Davis will pay Nailite the sum of fifteen thousand dollars ($15,000.00).

2. This Agreement does not constitute, is not intended to constitute, and should not be construed as constituting an admission or evidence of fault, wrongdoing or liability by

any party to this Agreement, but rather reflects the desire of the Parties to resolve all claims in a fair and amicable manner.

3.    Each of the Parties shall bear its own costs, expenses, and attorneys' fees heretofore incurred in the Litigation.

4.    Each of the Parties acknowledges that (I) this Agreement has been negotiated and drafted by counsel for each of the Parties; (ii) the terms and conditions herein set forth are fair, adequate, reasonable, and proper; and (iii) taking into account the different positions of the Parties and the expenses and uncertainties of litigation is in each of the Parties' respective best interests.

5.    Nailite hereby fully and completely releases and discharges Davis of, from and against all demands, claims, actions, causes of action, suits, debts, penalties, damages, liabilities, costs and expenses, whether in contract or tort or at law or in equity that Nailite may have, could have or hereafter may have and which, directly or indirectly, arise out of or are related to, or which are directly or indirectly alleged to arise out of or be related to, the Amforge Site, including, but not limited to, those claims asserted by Nailite in the Litigation (collectively, "Amforge Related Claims").

6.    Davis hereby fully and completely release and discharge Nailite of, from and against all demands, claims, actions, causes of action, suits, debts, penalties, damages, liabilities, costs and expenses, whether in contract or tort or at law or in equity that Davis may have, could have or hereafter may have and which, directly or indirectly, arise out of or are related to, or which are directly or indirectly alleged to arise out of or be related to, the Amforge Site.

7.    Whenever possible, each provision of this Agreement shall be interpreted in such a manner as to be effective and valid under applicable law, but if any provision of this Agreement shall be prohibited or invalid under law, such provision shall be ineffective only to the extent of such provision, the sections and provisions of this Agreement being severable.

8.    This Agreement shall be binding upon and shall inure to the benefit of each of the Parties and each of their respective predecessors, successors, executors,

2

administrators, heirs, representatives, members, affiliates, shareholders, directors, officers, employees, assigns, and attorneys.

9.      No change in, modification to, or amendment of any provision of this Agreement shall be valid or binding unless it is in writing, signed by the party to be bound thereto.

10.      This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of Illinois. Each of the Parties hereby submits to the jurisdiction of the courts located in the State of Illinois with respect to the construction and enforcement of this Agreement.

11.      This Agreement sets forth the entire agreement and understanding of the Parties in respect of the settlement and supersedes all prior agreements, arrangements, and understandings related to settlement of the Litigation; provided that, it is agreed among the Parties that this Settlement Agreement is specifically conditioned upon the Court approving and entering a Consent Decree in substantially the form attached here as Attachment A, and in the event the Consent Decree is not so approved and entered prior to December 31, 2008 this Settlement Agreement shall be null and void.

12.      Each of the Parties agrees to perform any further acts and to execute any further documents that may be reasonably necessary to carry out the terms and provisions of this Agreement.

13.      Nailite covenants and agrees not to sue any of the parties to the 1988 SPA with respect to any Amforge Related Claims; provided, however, that Nailite may sue any such party who first sues Nailite, and Nailite may assert any and all claims that it may have against such party, including without limitation, any Amforge Related Claims.

3

14.    This Agreement may be executed in counterparts.  Facsimile signatures shall have the same force and effect as original signatures.

**Nailite International, Inc.**

_____
Elizabeth F. Davis

By:_____

Title:  **Vice President**

14.     This Agreement may be executed in counterparts.  Facsimile signatures shall have the same force and effect as original signatures.


_Elizabeth F. Davis_                                    **Nallite International, Inc.**

**Elizabeth F. Davis**

                                                        **By:**_____
                                                            Title:

4